NOT FOR PUBLICATION                                          (Doc. Nos. 72, 73)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                    :
ALMA GALLETTA, ESTHER STOLLER,   :
OPAL BOVA, and ROSALIE                       :
BARBAGALLO, individually and               :
on behalf of themselves and all others      :
similarly situated,                                  :
                                                    :
                        Plaintiffs,              :        Civil No. 13-532 (RBK/AMD)
                                                    :
                v.                                  :        **OPINION**
                                                    :
JENNIFER VELEZ, COMMISSIONER,      :
NEW JERSEY DEPARTMENT OF             :
HUMAN SERVICES; VALERIE HARR,       :
DIRECTOR, NEW JERSEY DIVISION        :
OF MEDICAL ASSISTANCE AND            :
HEALTH SERVICES, BERGEN               :
COUNTY BOARD OF SOCIAL                :
SERVICES, MORRIS COUNTY BOARD      :
OF SOCIAL SERVICES, MONMOUTH        :
COUNTY BOARD OF SOCIAL                :
SERVICES, AND OCEAN COUNTY          :
BOARD OF SOCIAL SERVICES,            :
                                                    :
                        Defendants.            :
_____  :

**KUGLER**, United States District Judge:

        This matter comes before the Court on the motion of Plaintiff Esther Stoller ("Plaintiff")

for summary judgment on her claims against Jennifer Velez, Commissioner of the New Jersey

Department of Human Services ("DHS"), Valerie Harr, Director of the New Jersey Division of

Medical Assistance and Health Services ("DMAHS"), and Monmouth County Division of Social

Services ("MCDSS").[1]  On May 2, 2014, Plaintiff filed a motion for a preliminary injunction.

_____
[1] Improperly pled in the Amended Complaint as "Monmouth County Board of Social Services."

On May 7, the Court held a hearing on the motion, and finding that a preliminary injunction was not appropriate, but that no material facts were in dispute, converted the motion into one for summary judgment. Now, for the reasons expressed herein, Plaintiff's motion will be **GRANTED IN PART**.

## I.       BACKGROUND AND PROCEDURAL HISTORY

This is a dispute regarding Plaintiff's eligibility for certain Medicaid benefits that could potentially cover the cost of her residence at an assisted living facility. Plaintiff's application for benefits under a program operated by DHS known as Global Options for Long Term Care (the "GO" program), was denied. The GO program is evidently the only Medicaid-funded program in New Jersey that covers assisted living costs. Plaintiff's application was denied because MCDSS determined that her monthly income exceeds the maximum income threshold at which an applicant can still be eligible for those benefits. Specifically, Defendants included as "countable income" benefits that Plaintiff receives from the Veterans Administration Improved Pension program (the "VAIP"). The VAIP is administered by the Department of Veterans Affairs (the "DVA"). If Plaintiff's VAIP benefits are not included as "countable income," her income would be below the maximum allowance for the GO program, and she believes that she would have been granted the benefits she sought. Plaintiff now moves to enjoin Defendants from treating her VAIP benefits as countable income.

### A.  Background of the Litigation

This case is the latest in a line of similar actions this Court has presided over involving the interplay between VAIP benefits and financial eligibility under the Medicaid program. In Gartzman v. Velez, Civ. No. 11-2520, the plaintiff filed suit on May 2, 2011 against the Commissioner of DHS, the Director of DMAHS, and the Camden County Board of Social

Services ("CCBSS").  The <u>Gartzman</u> plaintiff alleged that these state and municipal entities were improperly counting her VAIP benefits as income for Medicare eligibility purposes, which resulted in her being declared ineligible for benefits under the GO program.  The <u>Gartzman</u> plaintiff sought to enjoin the defendants from counting her VAIP as income for Medicare eligibility purposes.

On June 14, 2011, Ms. Gartzman's counsel filed a motion for temporary injunctive relief, indicating that if she was not declared eligible for the GO program, she would be forced out of her assisted living facility in August 2011.  The Court set an Order to Show Cause Hearing for June 30, 2011.  On June 27, 2011, the New Jersey Attorney General's office filed a letter indicating that the defendants would "no longer count Ms. Gartzman's $661 'death benefit pension' or 'improved pension' . . . as income because the defendants will consider it to be payment for unusual medical expenses."  <u>Gartzman v. Velez</u>, Civ. No. 11-2520, ECF No. 18. The letter went on to suggest that the problem arose due to the DVA failing to clearly state that the VAIP was payment toward reimbursement for medical expenses.  <u>Id.</u>  The plaintiff's motion for a preliminary injunction was thus dismissed as moot, and the parties later executed a stipulation of dismissal.

The next case filed in this line was <u>Krammer v. Velez</u>, Civ. No. 11-4924.  The <u>Krammer</u> plaintiff, represented by the same counsel as the plaintiff in <u>Gartzman</u>, filed suit against the same defendants on August 15, 2011.  Unlike the <u>Gartzman</u> suit, the <u>Krammer</u> suit was instituted as a putative class action.  The complaint essentially sought the same relief as in <u>Gartzman</u>, except that the plaintiff sought to assert claims on behalf of all persons who had been denied benefits by DHS or county boards of social services in New Jersey in the six years preceding the filing of the action, as a result of counting VAIP awards as "countable income."  On August 31, 2011, Ms.

Krammer, through counsel, filed a motion for a preliminary injunction, indicating that her situation in an assisted living facility would be jeopardized if she were not accepted into the GO program.  The motion did not specify any eviction date.  The Court set a hearing date on the preliminary injunction for October 28, 2011.  In <u>Krammer</u>, the State of New Jersey filed an opposition to the motion for a preliminary injunction.  <u>See</u> <u>Krammer v. Velez</u>, Civ. No. 11-4924, ECF No. 14.  The State argued that the plaintiff could not show a likelihood of success on the merits, but also agreed to process Ms. Krammer's application for eligibility under the GO program.[2]  On October 28, 2011, the Court held a hearing and denied the motion for a preliminary injunction on the record.  <u>See</u> Civ. No. 11-4924, ECF No. 17.

The defendants in <u>Krammer</u> then moved to dismiss the case on mootness grounds because Ms. Krammer had been granted Medicaid eligibility under the GO program, and a class had not yet been certified.  Plaintiff opposed the motion.  However, during the pendency of the motion, Ms. Krammer died on September 1, 2012, and the parties submitted a stipulation of dismissal as a result of her death.

### B.  The Instant <u>Galletta</u> Suit

The instant action was filed on January 28, 2013, by Alma Galletta, as a putative class action complaint.  Ms. Galletta was represented by the same counsel as the <u>Gartzman</u> and <u>Krammer</u> plaintiffs, and sought the same relief as the plaintiffs in those cases.  Ms. Galletta filed suit against the same State defendants, and against the Bergen County Board of Social Services.  On April 3, 2013, the State moved to dismiss the complaint on mootness grounds, indicating that

---

[2] Although DMAHS did not commit to Ms. Krammer being found eligible for the GO program, it indicated that it would process her application "on the theory that the [DVA] pension based on unreimbursed medical costs (which would be covered by Medicaid once eligibility is granted) will end once Medicaid eligibility is granted, and any excess resources Ms. Krammer accumulates will be returned."  <u>Krammer v. Velez</u>, Civ. No. 11-4924, ECF No. 14 at 1.

on March 13, 2013, it had determined that Ms. Galletta was eligible for Medicaid benefits through the Global Options waiver program.  Plaintiff opposed the motion, arguing that the case was not moot, and in the alternative, one of the established exceptions to the mootness doctrine applied.  On November 12, 2013, the Court denied the motion to dismiss, finding that the case was not moot.  See Op. Den. Mot. Dismiss, Nov. 12, 2013, ECF No. 25.  The Court subsequently denied a motion for reconsideration filed by the State defendants.  See Op. Den. Mot. Recons., Feb. 8, 2014, ECF No. 44.

On February 19, 2014, Magistrate Judge Donio granted a motion by Plaintiff for leave to amend the Complaint, and on February 24, 2014, a First Amended Class Action Complaint was filed, which added as plaintiffs Esther Stoller, Opal Bova and Rosalie Barbagallo.  See ECF No. 49.  The amended pleading also added additional county defendants, including MCDSS.  These additional plaintiffs seek the same relief as Ms. Galletta, and allege that they were improperly denied benefits under the Global Options program by the State and county defendants due to Defendants' inclusion of their VAIP benefits as countable income.  They challenge their benefits denials under 42 U.S.C. § 1983 and seek injunctive and declaratory relief.

Plaintiff is a ninety-three year old resident of The Chelsea at Manalapan ("The Chelsea"), which is an assisted living home in Manalapan, New Jersey.  She applied for the GO program, and her application was denied by MCDSS on August 22, 2013, because her monthly income of $2,594.00, as calculated by MCDSS, exceeded the maximum allowable income for participation in GO, which is $2,130.00 per month.[3]  Had MCDSS not counted $696.00 in VAIP benefits per month as income, Plaintiff argues that she would have been eligible for the GO program.

---

[3] As explained later in this memorandum, individual decisions on eligibility are made on the local level by county welfare agencies that DMAHS contracts with. See N.J.A.C. 10:71-1.5.

Based upon the evidence in the record, Plaintiff receives monthly income from two sources.  The first is her social security benefit, in the amount of $1,750.00 per month.  Harvey Stoller Aff., Ex. 1-A.  The second source is her VAIP benefit, which totals $1,113.00 per month. Id.  Plaintiff turns over the total received from these two sources to The Chelsea, after making limited deductions for health insurance premiums and personal needs.  Id.  In addition to turning over these monthly funds towards her assisted living costs, Plaintiff's children also pay a total of $1,380.00 per month out of their own personal funds for Plaintiff's assisted living costs.  See id. The $1,380.00 per month represents the difference between the cost of a private room and a shared room.

Plaintiff first became a resident of The Chelsea in August 2011, with the expectation that she or her family would pay the cost of residence out of their private funds for a period of two years.  Harvey Stoller Aff. Ex. 1-G.  The expectation was that at the end of those two years, Ms. Stoller would apply for, and be granted, eligibility under the GO program.  The Chelsea then expected to begin receiving monies from the GO program pursuant to Plaintiff's eligibility thereunder.  Because the monthly amount currently being paid to The Chelsea does not cover her assisted living costs in full, it appears that since August 2013, an employee of The Chelsea named Joanne Prospero has been seeking a written promise from Plaintiff's son, Harvey Stoller, that if his mother is ultimately not accepted into the GO program, or accepted after August 2013, he will personally assume responsibility for any balance owed to the Chelsea.  See id. Ex. 1-B. Mr. Stoller has evidently refused to make such a written guarantee.  See id. Ex. 1-C.  Ms. Prospero indicated in a December 16, 2013 letter that if Mr. Stoller would not accept responsibility for the unpaid balance, he could "consider this [letter] a 30 day notice," evidently referring to a refusal to allow Ms. Stoller to continue living at the home after the thirty days.  Id.

Ex. 1-B.  The Chelsea did not follow through on this notice, as more recently, on April 10, 2014, Ms. Prospero sent a new letter to Mr. Stoller, indicating that "we are going to have to issue a 30 day notice effective April 10th 2014."  Id. Ex. 1-D.  It appears that as of May 1, 2014, there is an unpaid balance owed to The Chelsea of $21,439.29.  Id. Ex. 1-F.

On May 2, 2014, Plaintiff filed a petition for emergency relief, indicating that she would be evicted from her assisted living facility if she is not granted eligibility under the GO program. On May 7, 2014, the Court held a hearing on Plaintiff's motion, and heard testimony from her Mr. Stoller, who testified that he possesses legal power of attorney for Plaintiff.  The Court converted the motion to one for summary judgment.

## II.    LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'") (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  Anderson, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  Id. at 255; Matsushita, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  <u>Anderson</u>, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor.  <u>Id.</u> at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## III.   DISCUSSION

After analyzing the federal law underlying the VAIP, Medicaid's regulatory framework, and the relevant case law, the Court concludes that the benefits Plaintiff receives from her VAIP result from unusual medical expenses ("UMEs"), and thus should not be counted as income for Medicaid purposes.

### A.  The VAIP Program

The VAIP program was created by the Veterans' and Survivors' Pension Improvement Act of 1978 (the "VSPIA"), Pub. L. 95-588.[4]  Congress intended the VSPIA to ensure that dependents of veterans have a minimum monthly income to meet their daily needs after the veteran's death.  <u>See</u> <u>Mitson v. Coler</u>, 670 F. Supp. 1568, 1572 (S.D. Fla. 1987) (citing 38 U.S.C. §§ 500-08; 38 U.S.C. §§ 521-23).  According to the applicable statute, if the surviving spouse of a veteran with non-service related disabilities does not have any dependent children, the surviving spouse is eligible to receive an annual "pension" of "$7,933, reduced by the amount of the surviving spouse's annual income."  38 U.S.C. § 1541(b).  A surviving spouse with no

---

[4] Congress amended the VSPIA.  The amended version appears at 38 U.S.C. § 1541 <u>et</u> <u>seq.</u>

dependent children that is "in need of regular aid and attendance" is eligible to receive an annual benefit of "$12,681, reduced by the amount of the surviving spouse's annual income."  38 U.S.C. § 1541(d).[5]  The statutory scheme also provides for periodic cost-of-living increases to the statutory pension amount, which are tied to the rate of cost-of-living increases in benefits payable under the Social Security Act.  See 38 U.S.C. § 5312.  Thus, factoring in annual adjustments since the enactment of § 1541, the maximum VAIP benefit for a surviving spouse without dependent children during calendar year 2013 was $13,356.00, or $1,113.00 per month.  Am. Compl. Ex. H.

These benefits are means-tested, which results in the benefits being reduced by income received from non-DVA sources.  38 U.S.C. § 1541(d).  In order to calculate the VAIP award amount, the DVA first arrives at an entitlement amount, and then applies the means test.  An applicant's "annual income" (sometimes referred to as Income for VA Purposes, or "IVAP"), includes "all payments of any kind or from any source" unless expressly excepted.  38 U.S.C. § 1503(a); see McDaniel-May v. Shinseki, No. 07-2550, 2009 WL 1133056, at *2 (Vet. App. Apr. 27, 2009).  The VSPIA excludes from an applicant's annual income any "unreimbursed medical expenses, to the extent that such amounts exceed 5 percent of the maximum annual rate of pension . . . ."  38 U.S.C. § 1503(a)(8).  Thus, if an applicant had an "annual income" of greater than $13,356.00 during calendar year 2013, she would not be eligible for any VAIP benefit.

---

[5] Need for "aid and attendance" is defined as "helplessness or being so nearly helpless as to require the regular aid and attendance of another person."  38 C.F.R. § 3.351(b).  A person will be found to be in need of aid and attendance if (1) she requires the aid of another person in order to perform personal functions required in everyday living, such as bathing, feeding, dressing, attending to the wants of nature, adjusting prosthetic devices, or protecting herself from the hazards of her daily environment, or (2) she is bedridden, in that her disability or disabilities requires that she remain in bed apart from any prescribed course of rest or convalescence, or any voluntary taking to bed, or (3) she is a patient in a nursing home due to mental or physical incapacity, or (4) her eyesight is limited to a corrected 5/200 visual acuity or less in both eyes; or concentric contraction of the visual field to 5 degrees or less.  See 38 C.F.R. § 3.351(c); 38 C.F.R. § 3.352(a).

However, if an applicant's unreimbursed medical expenses exceed her income, she will be eligible to receive the entire statutory benefit amount, because her "annual income" as defined in the statute would be negative, which is counted as zero by the DVA.

Plaintiff's late husband was a veteran, and in March 2010, she applied to the DVA for a pension based upon his veteran status.  The application was granted, and her initial VAIP benefits totaled $1,056 per month, which was the full statutory VAIP benefit at that time for a surviving spouse "in need of regular aid and attendance" and without dependent children.  Am. Compl. Ex. H.  Her receipt of these benefits has continued through the present time, and in 2013, due to annual adjustments, the award totaled the maximum amount of $1,113.00 per month.  For that year, the DVA determined that Plaintiff had $52,944.00 in unreimbursed medical expenses, which was greater than her annual income of $22,841.00.[6]  Thus, the DVA found that Plaintiff's "countable income" for purposes of determining her VAIP benefit was $0.  Am. Compl. Ex. H.  The parties do not dispute that Plaintiff is entitled to this VAIP benefit.

### B.  Medicaid Global Options Program

The Medicaid program is a creature of federal law, but is implemented at the state level.  It provides coverage for medical care to individuals who cannot afford to obtain it on their own.  See 42 U.S.C § 1396, et seq.  The program is designed to provide benefits to persons "whose income and resources are insufficient to meet the cost of necessary medical services."  42 U.S.C. § 1396-1.  State participation is voluntary; however, states that participate in the Medicaid program must comply with the federal statutory and regulatory framework governing Medicaid.  Sabree v. Richman, 367 F.3d 180, 182 (3d Cir. 2004).  New Jersey has authorized participation in the Medicaid program through its Medical Assistance and Health Services Act, N.J.S.A.

---

[6] For 2013, Ms. Stoller's annual income was almost entirely made up of Social Security benefits.  Only $55 was attributed to "other sources" by the DVA.  Am. Compl. Ex. H.

30:4D-1, et seq.  The state's Medicaid program is administered by the DMAHS, the Director of which is Defendant Valerie Harr.  See N.J.A.C. 10:49-1.1(a).  DMAHS, in turn, is a division of DHS, the Commissioner of which is Defendant Jennifer Velez.  See N.J.S.A. 30:4D-4. Individual decisions on Medicaid eligibility are made on the local level by county welfare agencies that DMAHS contracts with. N.J.A.C. 10:71-1.5.  When seeking an eligibility decision, applicants must provide the county agencies with documentation and evidence related to their resources.  See N.J.A.C. 10:71-2.2(e); N.J.A.C. 10:71-3.1(b).  In this case, Plaintiff's eligibility determination was made by Defendant MCDSS.

The GO program is funded by Medicaid, and covers medical care in assisted living facilities.  See N.J.S.A. 30:4D-17.23-17.32.  In order to be approved for the GO program, a person must meet eligibility requirements, which involves a showing of income and resources below certain maximum levels, which was $2,130.00 per month for calendar year 2013, the year in which Plaintiff first applied to the GO program.  Pl.'s Pet. Emergency Relief Ex. 2.  Plaintiff's application was denied because her monthly income was found to be $2,594.90, which included $696.00 from her VAIP benefit.  Id.  MCBSS did not count $417.00 out of her VAIP benefit, because it determined that portion was for aid and attendance, and thus not countable as income. Id.

### C.  Plaintiff's Countable Income

Plaintiff contends that the entire income she received from her VAIP benefit resulted from unusual medical expense, or UMEs, and therefore none of it should have been counted toward her income calculation for Medicaid eligibility purposes.

The relevant statute for Supplemental Security Income ("SSI") provides that a "[p]ayment from the Department of Veterans Affairs resulting from unusual medical expenses"

is "not income."  20 C.F.R. § 416.1103(a)(7).  UMEs in turn, means unreimbursed expenditures

for medical treatment exceeding five percent of a person's annual income.  38 C.F.R. § 3.262(l);

see also Buchanan v. Whiteman, 877 F. Supp. 571, 574 n.3 (D. Kan. 1995) ("The terms

unreimbursed medical expenses, reimbursed unusual medical expenses, and unusual medical

expenses seem to be used interchangeably throughout the case law").  Pursuant to 42 U.S.C. §

1396a(r)(2), the definition of income for purposes of SSI eligibility also applies to Medicaid

eligibility.  See Sherman v. Griepentrog, 775 F. Supp. 1383, 1385 (D. Nev. 1991) ("the term

'income' is not defined in the Medicaid statute itself (42 U.S.C. § 1396a et seq.) but instead by

reference to the related financial assistance program, Supplemental Security Income.") (citing 42

U.S.C. § 1396a(r)(2)).  Thus, a VAIP pension "resulting from unusual medical expenses" may

not be counted as income for the purposes of any Medicaid program.

It is this law that Plaintiff relies on, arguing that had the payments she received from

VAIP been properly excluded from her income for the purposes of Medicaid eligibility, she

would have been eligible for the GO program she applied for.

Plaintiff points out that all non-VA income is generally deducted from a VAIP benefit

regardless of its source.  However, an exception to this rule is found at 38 U.S.C. § 1503(a)(8),

which indicates that:

> amounts equal to amounts paid by a veteran, veterans' spouse, or surviving
> spouse or by or on behalf of a veteran's child for unreimbursed medical expenses,
> to the extent that such amounts exceed 5 percent of the maximum annual rate of
> pension . . . payable to such veteran, surviving spouse, or child.

This clause has been held to be a "medical expense reimbursement provision."  Mitson v. Coler,

670 F. Supp. 1568, 1572 (S.D. Fla. 1987).

The Mitson court explained the UME provision as follows:

> An examination of how the UME provision actually operates demonstrate[s] the intent behind excluding unreimbursed medical expenses from income. For instance, prior to using their non-VA income to pay for their medical expenses, each of the Plaintiffs received $0 in VA pension benefits. However, once they became obligated to use their non-VA income to pay for their medical care, their VAIP awards were increased to reimburse them for using their non-VA income to pay for their medical expenses. In each instance, the Plaintiff would receive *no* VA pension at all but for the fact that they incur unusual medical expenses. Further, each plaintiff must <u>first</u> incur the medical expense and pay the same from non-VA sources before becoming eligible for *any* VA payments whatever.
>
> In fact, the pension recipient only serves as a conduit for the increased pension amount. He receives this increase in VAIP as long as he is incurring medical expenses equal to or greater than the increase. If, miraculously, a recipient recovers to the extent that he no longer requires nursing home care, he would no longer be eligible to receive the § 503(a)(8) reimbursement. In reality, the income that he has available to meet his basic needs never varies.
>
> Based upon the foregoing, it is apparent that the intent as well as the effect of § 503(a)(8) is to provide an applicant who uses his non-VA income for medical expenses with a reimbursement in the form of an increased VAIP award. Having determined that amounts received by Plaintiffs pursuant to § 503(a)(8) are properly characterized as medical expense reimbursements, the Court must now determine whether such reimbursements are income under the applicable SSI regulations.

<u>Id.</u> at 1573-74. The Court went on to find that the VAIP payments were not income for Medicaid purposes. <u>Id.</u> at 1575-76.

<u>Mitson</u> was decided prior to the adoption of 20 C.F.R. § 416.1103(a)(7) in 1994. <u>See</u> 59 Fed. Reg. 33906-01 (July 1, 1994). However, § 416.1103(a)(7) was intended to incorporate the rulings of the court in <u>Mitson</u> and similar cases. <u>Id.</u> Prior to the Secretary's adopting 20 C.F.R. § 416.1103(a)(7), claimants in various districts sued for injunctive relief preventing state agencies from including their VAIP benefits as income for purposes of determining SSI and Medicaid eligibility. <u>Id.</u> Those plaintiffs sued under 20 C.F.R. § 416.1103(a)(3), which provides that income does not include: "assistance provided in cash or in kind . . . under a Federal, State or local government program, whose purpose is to provide medical care or services." As a

result, a number of courts held that VAIP benefits were not income for purposes of SSI and Medicaid eligibility. See Summy v. Schweiker, 688 F.2d 1233 (9th Cir. 1982); Ginley v. White, No. 91-3290, 1992 U.S. Dist. LEXIS 866 (E.D. Pa. Jan. 24, 1992); Sherman v. Griepentrog, 775 F. Supp. 1383 (D. Nev. 1991); Mitson, 670 F. Supp. 1568; Peffers v. Bowman, 599 F. Supp. 353 (D. Idaho 1984).

In adopting 20 C.F.R. § 416.1103(a)(7), the Secretary explained: "We are adding § 416.1103(a)(7), which refers to DVA payments resulting from unusual medical expenses, to the list of medical care or services that are excluded from the definition of income." 59 Fed. Reg. 33906-01 (July 1, 1994). The Secretary further explained that § 416.1103(a)(7) was intended to "conform SSI policy to a number of court rulings that have required the Social Security Administration to consider Department of Veterans Affairs payments resulting from UMEs not to be income for SSI purposes." Id.

The only time that this issue appears to have been litigated after the 1994 amendment to the regulations resulted in a finding for a plaintiff who sought to exclude VAIP benefits from countable income. In Buchanan v. Whiteman, 877 F. Supp. 571 (D. Kan. 1995), the plaintiff received Medicaid coverage for nursing home expenses. Id. at 572. The DVA subsequently granted her application for VAIP benefits. Id. Of her $577 monthly VAIP benefit, the DVA attributed $248 to the plaintiff's aid and attendance. Id. The Kansas Department of Social and Rehabilitation Services subsequently revoked the plaintiff's Medicaid eligibility because it included the other $329 of her VAIP benefit in her income, which resulted in the plaintiff exceeding the income ceiling. Id. The plaintiff sued for an injunction preventing the state agency from including any portion of her VAIP benefit as income. While the case was pending, the Secretary adopted 20 C.F.R. § 416.1103(a)(7). Id. The court granted summary judgment for

14

the Plaintiff because it found that "the federal regulation has become a final rule and

unreimbursed medical expenses from DVA are no longer considered income for Medicaid

purposes." Id. at 574.

Similar to the situation in Buchanan, the state agency administering the Medicaid

program at issue has decided to exclude the portion of Plaintiff's VAIP award that it

characterizes as attributable to aid and attendance from countable income, but counts the

remainder of the VAIP award as income.  The issue in the instant motion is one of interpretation

of the amended § 416.1103(a)(7), and whether Plaintiff's entire VAIP award—not only the aid

and attendance portion—"result[ed] from unusual medical expenses."  It seems clear from the

language of the regulation that in a case where claimant would not receive any VAIP benefit

whatsoever if not for UMEs, then the entire VAIP benefit should be excluded from income for

Medicaid-eligibility purposes.  The only question that remains, then, is whether Plaintiff has

adequately demonstrated that she would receive no VAIP benefit if not for her UMEs.

The Court, then, turns to the evidence in the record connected with Plaintiff's VAIP

award.  The DVA determined that Plaintiff was entitled to the entire VAIP benefit for a

surviving spouse without dependents who is in need of regular aid and attendance, because her

unreimbursed medical expenses exceeded the statutory VAIP benefit.  See Pl.'s Mot. Summ. J.

Ex. 3.  In a letter date-stamped May 3, 2013, it found that Plaintiff's annual income included

$22,786.00 in Social Security benefits, and $55.00 from "other sources."  Id.  It then indicated

that "[w]e used family medical expenses you paid in the amount of $52,944.00 which reduces

your countable income to $0.00."  Id.  It further clarifies that the $52,944.00 includes the total

cost of Medicare Part B premiums, private medical insurance, and assisted living costs.  Id.

Thus, no adjustment to the pension due to family income was made.  Although Defendants argue

that in order to find that Plaintiff is eligible for the GO program, they would have to "look behind" the DVA letters, the Court believes it is clear from this document and the plain language of the VSPIA that Plaintiff's award would have been reduced by the amount of her social security income if not for her $52,844.00 of medical expenses.[7]  Plaintiff's entire VAIP benefit therefore "result[]s from . . . unusual medical expenses."  20 C.F.R. § 416.1103(a)(7); see Def.'s Opp'n to Summ. J. at 15.  Defendant MCDSS thus improperly included Plaintiff's VAIP benefit in her income for purposes of determining her Medicaid eligibility.

Defendants frame the issue differently.  Rather than questioning whether Plaintiff has demonstrated that she would not receive a VAIP award if not for UMEs, their position appears to be based entirely upon the premise that whenever the DVA classifies benefits paid as "aid and attendance," it does not count as income, and whenever it is classified otherwise, it does count as income.  Defendants have not cited anything in support of this black-and-white approach, yet they posit it throughout their brief as if it is indisputably true.  Defendants believe that they are being asked to reclassify Plaintiff's award as entirely aid and attendance.  This is not the case.  The Court finds that this dispute concerns the proper interpretation of 20 C.F.R § 416.1103(a)(7), which turns on whether payments result from UMEs, not whether they should be classified as "aid and attendance" or not.

The Court believes that Defendants' position misses the entire issue in this case, which is that—like in Buchanan—the entire VAIP benefit in certain cases should not be counted as income, regardless of what portion the DVA may classify as for "aid and attendance."  The regulations say nothing about whether an award is formally classified as aid and attendance or

---

[7] Because Plaintiff's Social Security benefit exceeded the amount of her maximum available VAIP award for 2013, the VAIP award would have been reduced to zero if not for her medical expenses.

not, and thus the Court declines to focus exclusively on the label placed on Plaintiff's VAIP award.

The closest source of support for Defendants' position is an SSA Program Operations Manual System document ("POMS"), which is an operational reference used by SSA staff.[8] This document does not support Defendant's position on aid and attendance. It contains a warning to SSA employees that reads: "CAUTION: Aid and attendance. . . is not income for SSI purposes. . . . Do not use the individual's VA check or award letter as verification of the monthly compensation amount since it may include the additional allowance." POMS SI 00830.320. Defendants evidently wish to infer from this that because "aid and attendance" should never count as income, other types of DVA benefits are countable income. However, this is not what the POMS says, and amounts to a logical non-sequitur. The existence of a negative does not automatically infer a corresponding positive. A caution to never include Aid and Attendance in income thus does not mean that every other type of DVA pension benefit is income. Similarly, instructions in the POMS not to use a DVA award letter as verification are not applicable here, since, as Defendants acknowledge, the cited POMS document relates to situations where data is transmitted directly between the SSA and DVA. Def.'s Opp'n to Summ. J. at 26. However, Defendants here do not communicate directly with the DVA. Id. at 24. Thus, the only way that Defendants can make a determination as to the effect of Plaintiff's VAIP benefit is by review of documents furnished by the DVA to a pension benefit recipient. Because Defendants have not pointed to any interpretation by the SSA that is consistent with its position, the Court need not apply the "substantial deference" approach that must be given to interpretations by a federal

---

[8] Defendants have not attached the POMS document as an exhibit to their brief. Although they state that it may be found on the SSA's website, they do not provide a link to its internet location. The Court was able to locate what it believes to be the document referred to by Defendants. See SI 00830.320 (https://secure.ssa.gov/apps10/poms.nsf/lnx/0500830320).

agency of the regulations it must enforce.  See West v. Bowen, 879 F.2d 1122, 1124 (3d Cir. 1989).

 Defendants also seek to place blame for any denial of Plaintiff's rights with the DVA for failing to provide clear communications breaking down VAIP awards into "pension" and "aid and attendance."  This argument is not compelling, as it relates to Defendants' desire to equate "aid and attendance" with "resulting from unusual medical expenses."  As indicated, these two descriptions are not necessarily coextensive with each other.  Further, Defendants fail to distinguish any of the cases cited by Plaintiff that appear to have decided a similar issue, such as Mitson, which was decided prior to the adoption of § 416.1103(a)(7), and Buchanan, which was decided after its adoption.  Nor have Defendants explained why the Secretary's comments on the adoption of § 416.1103(a)(7), indicating an intention to conform SSI policy with the rules set forth in that line of cases, do not require a finding in Plaintiff's favor.

 The Court further observes that the key issue here is not whether Defendants may require sufficient documentation from the DVA in order to verify the amount and character of a Medicaid applicant's VAIP award.  Although Defendants have asserted that they were acting within their "statutory and regulatory authority" in requiring Plaintiff to acquire certain documentation from the DVA, the Court does not decide what documents they may require in order to verify eligibility.  See Def.'s Opp'n Summ. J. at 13.  The issue, rather, is whether they may count all VAIP benefits as income unless it is explicitly described as "aid and attendance." The Court finds that under the language of the applicable statutes and regulations, they may not.

 This decision is limited to a conclusion that in Plaintiff's case, she has adequately demonstrated that her award resulted from unusual medical expenses.  It should not be construed to dictate to Defendants how they may verify income, as they suggest.  Id. at 13-14.  Defendants

may request whatever documentation they deem necessary in order to verify the eligibility of GO applicants, however, under controlling law, they cannot demand that an applicant furnish a letter explicitly labelling benefits as "Aid and Attendance" if it is already clear that such benefits are payments from the DVA resulting from UMEs.  Here, the factual record indicates that Plaintiff receives her entire VAIP award only because of her UMEs.

Finally, in support of their determination as to Plaintiff's VAIP award, Defendants cite a letter dated April 17, 2012 from Defendant Harr to County Welfare Agency Directors, setting forth DHS's position that DVA award letters are required, and must state that a VAIP award must be characterized in the letters as "aid and attendance" to avoid being counted as income. Def.'s Mot. Dismiss, Ex. B, ECF No. 73-2.  Defendants cannot prevail in an action challenging their policies by pointing to those same policies.  The Defendants have a nondiscretionary obligation to obey the federal administrative regulations if those regulations conflict with their own policies.  See Buchanan v. Apfel, 249 F.3d 485, 492 (6th Cir. 2001).

The Court observes that MCDSS has indicated that there were other issues that may have affected Plaintiff's Global Options eligibility aside from the classification of her VAIP benefits. MCDSS indicates that Plaintiff gifted a house in Florida to her son in 2012, and the house was subsequently sold.  Bernard Chiara Aff. ¶ 6.  MCDSS indicates that this may affect Plaintiff's eligibility in the GO program, but it did not investigate further because she was already being denied for excess income.  Id.  Therefore, this Opinion should not be construed as deciding whether Plaintiff is eligible for Global Options or not.  Rather, it is limited to enjoining Defendants from designating her VAIP benefits as income when it re-determines her eligibility.[9]

---

[9] The State defendants have indicated in their motion to dismiss that "anyone who is denied eligibility may reapply," and thus it is unnecessary to order Defendants to re-determine her eligibility.  Def.'s Mot. Dismiss at 34.  However, the exhibit cited by the State defendants (evidently incorrectly cited as Exhibit B, instead of Exhibit A) does not seem to exactly support that proposition.  Exhibit A to Defendant's Motion to Dismiss indicates that an individual

### D. Motion to Dimiss

Defendant's motion to dismiss (ECF No. 73) will be denied in the Order accompanying this Opinion.  Defendants' motion to dismiss primarily presents similar legal arguments to those discussed in this Opinion.  Where a complaint meets the minimum pleading standards, arguments as to the merits of the case are not properly the subject of a motion to dismiss under Rule 12(b)(6).  See Borawski v. Henderson, 265 F. Supp. 2d. 475 (D.N.J. 2003); United States v. Mitchell, Civ. No. 00-45, 2002 WL 1058117, at *2 (D.N.J. Apr. 17, 2002).  The motion papers argue at length that Plaintiffs have misinterpreted the regulations, and those arguments have been addressed in the foregoing discussion.  See Def.'s Mot. Dismiss at 20-22.

Contrary to Defendants' assertion in their motion, Plaintiffs' Complaint is not fatally deficient because it omits the DVA as a defendant.  For the reasons discussed herein, the relief awarded to Plaintiff turns on whether the defendants named in the First Amended Class Action Complaint denied Plaintiff of due process rights as a result of improper application of a federal regulation.  Where a plaintiff alleges that she was improperly denied access to an entitlement program due to improper administration of the program by a state actor, as here, she states a claim.  See Kapps v. Wing, 404 F.3d 105, 113 (2d Cir. 2005) ("procedural due process protections ordinarily attach where state or federal law confers an entitlement to benefits").  Defendants' arguments are thus largely addressed in this Opinion.  Defendants are not barred from raising other legal arguments contained in their motion to dismiss at an appropriate time, such as their argument that the Eleventh Amendment bars any award of retroactive benefits.  However, because that demand is not a cause of action in the complaint, it is not properly

---

may reapply "during the pendency of the hearing."  Id., Ex A at 2 n.1.  Because it is not clear whether the state administrative proceeding is still considered pending, the Court will order the benefits redetermination out of an abundance of caution.

dismissed at this juncture.  See Garcia v. M-F Athletic Co., Civ. No. 11-2430, 2012 WL 531008, at *4 n.4 (E.D. Cal. Feb. 17, 2012) (requests for types of damages that are not "stand alone" causes of action are not appropriate material to consider for dismissal in a 12(b)(6) motion).

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's motion will be **GRANTED** to the extent that it seeks an Order enjoining Defendants from classifying her VAIP benefits as income when determining her eligibility for Medicaid benefits, and ordering defendants to re-determine Plaintiff's eligibility for Medicaid benefits.  The motion will be **DENIED** to the extent that it seeks other relief sought in the First Amended Class Action Complaint.


Dated:  6/3/2014                                            /s/ Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge

21